J-A11029-17

2017 PA Super 217

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| JOHN LAMONTE ENNELS | |
| Appellee | No. 1895 MDA 2016 |

Appeal from the Suppression Order October 19, 2016
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0002605-2016

BEFORE:  SHOGAN, J., MOULTON, J., and STEVENS, P.J.E.[*]

OPINION BY MOULTON, J.:                    **FILED JULY 11, 2017**

The Commonwealth appeals from the October 19, 2016 order entered by the Berks County Court of Common Pleas granting Appellee John Lamonte Ennels' motion to suppress the results of a warrantless blood test.[1] On appeal, the Commonwealth makes two arguments:  (1) that the ban on warrantless blood tests set out in ***Birchfield v. North Dakota***, 136 S.Ct. 2160 (2016), does not apply to those suspected of driving under the

---

[*] Former Justice specially assigned to the Superior Court.

[1] In its notice of appeal, the Commonwealth certified that the trial court's order granting Ennels' motion to suppress terminates or substantially handicaps the prosecution.  ***See*** Pa.R.A.P. 311(d) (permitting interlocutory appeal where Commonwealth certifies with its notice of appeal that order terminates or substantially handicaps prosecution).  Thus, the appeal is properly before us.  ***See Commonwealth v. Ivy***, 146 A.3d 241, 244 n.2 (Pa.Super. 2016).

influence ("DUI") of controlled substances, as opposed to alcohol; and (2) that, in any event, Ennels' consent to the test was not tainted by an inaccurate warning of the consequences of refusal. Because we disagree with both contentions, we affirm.

The trial court set forth the following facts:

1. On or about Saturday, March 12, 2016, Reading Police Officer Marco Rodriguez responded to the 1098 block of Penn Street in the City of Reading for a reported vehicle accident.

2. At that time, police were advised via dispatch that one of the vehicles involved in the accident was attempting to leave the scene.

3. Officer Contreras[2] initiated a traffic stop on the vehicle that was reportedly leaving the scene.

4. The driver of that vehicle was identified to be . . . Ennels.

5. Officer Rodriguez parked his patrol car in front of [Ennels'] vehicle and Officer Contreras' patrol car was parked behind [Ennels'] vehicle.

6. As per Officer Rodriguez's testimony, he parked his car in front of [Ennels'] car "to prevent the vehicle from attempting to leave again."

7. At that time, the officer noted the overwhelming smell of marijuana emanating from the vehicle.

8. Officer Rodriguez asked [Ennels] to step out of the vehicle.

9. The vehicle was searched and a partially-smoked blunt of what was later determined to be marijuana was found inside the vehicle.

---

[2] Officer Contreras' first name is not in the record.

10. As a result of the traffic stop, [Ennels] was arrested for DUI and transported to St. Joseph's Medical Center.

11. [Ennels'] vehicle was towed from the scene of the accident because he was taken into custody, officers determined that [Ennels'] license was suspended, and there were no available drivers to remove the vehicle from the scene of the accident.

12. At approximately 20:27 hours, Officer Rodriguez asked [Ennels] to submit to a blood draw and read the Pennsylvania Department of Transportation DL-26 form to [Ennels].

13. [Ennels] signed the DL-26 form in the presence of Officer Rodriguez.

14. The DL-26 form was admitted into evidence as Commonwealth Exhibit 2.

15. [Ennels] submitted to chemical blood testing at 20:43 hours.

16. At that time, [Ennels] did not express any hesitation or concern with the DL-26 warnings.

17. After [Ennels'] blood was drawn, he was transported home by Officer Contreras.

Findings of Fact and Conclusions of Law in Disposition of Defendant's Omnibus Pretrial Motion, 10/19/16, at 2-3 ("Suppression Op.").

On March 12, 2016, Ennels was charged with DUI (controlled substance) and DUI (general impairment).[3]  On August 1, 2016, Ennels filed a motion to suppress the results of the blood test.  On September 2, 2016,

_____

[3] 75 Pa.C.S. §§ 3802(d)(1) and 3802(a)(1), respectively.  Ennels also was charged with possession of a small amount of marijuana, 35 P.S. § 780-113(a)(31)(i), driving while operating privilege is suspended or revoked, 75 Pa.C.S. § 1543(b)(1.1)(i), and duty to give information and render aid, 75 Pa.C.S. § 3744(a).

- 3 -

the trial court conducted a hearing and, on October 19, 2016, it granted the motion. The Commonwealth filed a timely notice of appeal.

The Commonwealth raises the following issues on appeal:

> A. Did the trial court err in suppressing evidence of [Ennels'] blood test results pursuant to ***Birchfield v. North Dakota***, ___ U.S. ___, 136 S.Ct. 2160, 195 L.Ed.2d 560 (2016) in a drug-related DUI prosecution, where blood testing is the only available method in Pennsylvania to determine whether a suspect is driving under the influence of a controlled substance, and thus the Pennsylvania implied consent statute is wholly enforceable?
>
> B. Did the trial court err in suppressing evidence of [Ennels'] blood test results pursuant to ***Birchfield v. North Dakota***, ___ U.S. ___, 136 S.Ct. 2160, 195 L.Ed.2d 560 (2016) in a drug-related DUI prosecution, where the potential penalties listed on the DL-26 form properly reflected the penalties related to drug-related DUI convictions, rendering the consent to the blood draw voluntary?

Cmwlth's Br. at 4 (unnecessary capitalization omitted).

When reviewing the grant of a suppression motion, we must determine whether the record supports the trial court's factual findings and "whether the legal conclusions drawn from those facts are correct." ***Commonwealth v. Brown***, 64 A.3d 1101, 1104 (Pa.Super. 2013) (quoting ***Commonwealth v. Cauley***, 10 A.3d 321, 325 (Pa.Super. 2010)). We may only consider evidence presented at the suppression hearing. ***In re L.J.***, 79 A.3d 1073, 1085-87 (Pa. 2013). In addition, because the defendant prevailed on this issue before the suppression court, we consider only the defendant's evidence and so much of the Commonwealth's evidence "as remains

- 4 -

uncontradicted when read in the context of the record as a whole." *Brown*, 64 A.3d at 1104 (quoting *Cauley,* 10 A.3d at 325). We may reverse only if the legal conclusions drawn from the facts are in error. *Id.*

The trial court granted Ennels' motion to suppress the results of the blood test based on *Birchfield*. Noting that (1) *Birchfield* held that "implied consent laws that impose criminal penalties on drivers who refuse to submit to blood tests violate the Fourth Amendment," Suppression Op., Concl. of Law, ¶ 10, (2) the police did not obtain a warrant prior to administration of the blood test, *id.* ¶ 11, and (3) the DL-26 form informed Ennels that he could be subject to enhanced penalties if he refused the test, *id.* ¶¶ 13-15, the trial court concluded that Ennels' "consent was not given freely, specifically, unequivocally, and voluntarily" and suppressed the results. *Id.* ¶ 18.

## I. *Birchfield* and Drug-Related DUI Prosecutions

The Commonwealth first argues that *Birchfield* has "limited applicability to drug-related DUI prosecutions." Cmwlth's Br. at 9; *see also id.* at 14 (*Birchfield* "provides little guidance in drug-related DUI prosecutions."). Because the *Birchfield* Court relied on the availability of warrantless **breath** tests in holding warrantless **blood** tests unconstitutional, and because breath tests are only useful in determining the presence and amount of **alcohol** (but not drugs) in a suspect's system, the Commonwealth contends that the constitutional balance must be struck differently in DUI cases involving controlled substances. In effect, the

Commonwealth asks this Court to hold that warrantless blood tests are permissible in drug-related DUI investigations.

*Birchfield* involved challenges to the use of both warrantless breath tests and warrantless blood tests to determine the blood alcohol content ("BAC") of an individual arrested for DUI.[4]  In a set of consolidated cases, the government parties argued that the administration of the tests was constitutional under both the search-incident-to-arrest and implied-consent exceptions to the warrant requirement.[5]  In assessing those government arguments, the Court engaged in a familiar balancing analysis, "examin[ing] the degree to which [the tests] intrude upon an individual's privacy and . . . the degree to which they are needed for the promotion of legitimate governmental interests."  *Birchfield*, 136 S.Ct. at 2176 (quoting *Riley v. California*, 134 S.Ct 2473, 2484 (2014)) (internal quotation marks and some internal brackets omitted); *see also id.* at 2185 n.8 ("[O]ur decision in *Riley* calls for a balancing of individual privacy interests and legitimate

_____

[4] The Supreme Court did not address the constitutionality of urine tests in *Birchfield*.  At least one court has found that urine tests are more akin to a blood test and, therefore, are impermissible as a search incident to arrest.  *See Minnesota v. Thompson*, 886 N.W.2d 224 (Minn. 2016), cert denied, 137 S.Ct. 1338 (Mar. 20, 2017).  Urine testing is not available to law enforcement in DUI cases in Pennsylvania.  *See* Act No. 2016-33, S.B. No. 290 (amending 75 Pa.C.S. § 1547 to remove references to urine as an available chemical test).

[5] All parties, and the Court, agreed that breath tests and blood tests are searches covered by the Fourth Amendment.  *Birchfield*, 136 S.Ct. at 2173.

state interests to determine the reasonableness of the category of warrantless search that is at issue.").

First, the Court addressed the impact of each test on an individual's privacy interests. As to breath tests, the Court reasoned that: they involve an "almost negligible" physical intrusion, *id.* at 2176; "[e]xhalation is a natural process," *id.* at 2177; the tests "are capable of revealing only one bit of information, the amount of alcohol in the subject's breath," *id.*; and the tests are unlikely "to cause any great enhancement in the embarrassment that is inherent in any arrest," *id.* Accordingly, the Court concluded that "breath test[s] do[] not implicate significant privacy concerns." *Id.* at 2178 (internal quotation marks omitted; some alterations in original).

In contrast, the Court found that blood tests are "significantly more intrusive." *Id.* at 2184; *see also id.* at 2178. It reasoned that: the tests "'require piercing the skin' and extract[ing] a part of the subject's body"; unlike exhaling air, "humans do not continually shed blood"; and a blood sample may be preserved by the police and contains "information beyond a simple BAC reading." *Id.* at 2178.

The Court next addressed "the States' asserted need to obtain BAC readings for persons arrested for drunk driving," *id.*, and the relationship between that need and "[t]he laws at issue in the present cases – which make it a crime to refuse to submit to a BAC test," *id.* at 2179. Noting that state and federal governments have a "paramount interest . . . in preserving the safety of . . . public highways," *id.* at 2178 (quoting *Mackey v.*

***Montrym***, 443 U.S. 1, 17 (1979)) (alterations in original), and that alcohol continues to be a leading cause of traffic fatalities and injuries, ***id.***, the Court concluded that laws "designed to provide an incentive to cooperate" in DUI cases "serve a very important function." ***Id.*** at 2179.

The Court then weighed the intrusion occasioned by each test against the government's interest. As to breath tests, it concluded that "the Fourth Amendment permits warrantless breath tests incident to arrests for drunk driving" because the "impact of breath tests on privacy is slight, and the need for BAC testing is great." ***Id.*** at 2184.

The Court reached the opposite conclusion with respect to warrantless blood tests. ***Id.*** at 2185. In part because the reasonableness of blood tests "must be judged in light of the availability of the less invasive alternative of a breath test," ***id.*** at 2184, which "in most cases amply serve[s] law enforcement interests," ***id.*** at 2185, it concluded that warrantless blood tests are not permissible as searches incident to arrest. The Court did acknowledge that "[o]ne advantage of blood tests is their ability to detect not just alcohol but also other substances that can impair a driver's ability to operate a car safely." ***Id.*** at 2184. The Court nevertheless concluded that when the police need such information, "[n]othing prevents [them] from seeking a warrant for a blood test when there is sufficient time to do so . . . or from relying on the exigent circumstances exception to the warrant

requirement when there is not." *Id.* (citing *Missouri v. McNeely*, 133 S.Ct. 1552, 1568 (2013)).[6]

The Court next addressed whether a warrantless blood test is permissible under the implied-consent exception to the warrant requirement. The Court noted that its "prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply" with BAC tests, and emphasized that "nothing we say here should be read to cast doubt on them." *Id.* at 2185. It found, however, that it is "another matter . . . for a State not only to insist upon an intrusive blood test, but also to impose **criminal** penalties on the refusal to submit to such a test." *Id.* (emphasis added). It explained: "[t]here must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads." *Id.* The Court, therefore, concluded that "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." *Id.* at 2186.

Following *Birchfield*, this Court has observed that Pennsylvania's implied-consent law "impose[s] criminal penalties on the refusal to submit

---

[6] The Court further noted two other shortcomings of breath tests: they cannot be performed on an unconscious person and they can be thwarted by an uncooperative suspect. *Birchfield*, 136 S.Ct. at 2184-85. Nevertheless, the Court concluded that in such situations the police remain free to employ the alternative of a blood test after obtaining a warrant. *Id.*

to" a blood test in contravention of **Birchfield**. **Commonwealth v. Evans**, 153 A.3d 323, 331 (Pa.Super. 2016) (quoting **Birchfield**, 136 S.Ct at 2185-86).[7] In **Evans**, we remanded a case to re-evaluate a defendant's consent where the defendant had agreed to a blood test after being warned of the now-invalidated increased penalty. **Id.** In **Commonwealth v. Giron**, 155 A.3d 635, 640 (Pa.Super. 2017), we vacated a judgment of sentence because the defendant had been unlawfully subjected to increased penalties based on his refusal to submit to a blood test.[8] We have not yet confronted the precise arguments advanced by the Commonwealth in this case.

The Commonwealth contends that neither **Birchfield** nor our recent decisions in **Evans** and **Giron** should control here, because Ennels was charged not with drunk driving but with driving under the influence of a controlled substance. We disagree. While the **Birchfield** Court did consider the availability of the less intrusive breath test in assessing the government need for warrantless blood tests, the Court's central focus was on the

---

[7] The Vehicle Code does not create a separate offense for refusal. Rather, it provides that an individual convicted of DUI (general impairment) who refused to submit to a blood test shall be subject to the same minimum sentence and minimum and maximum fines as someone convicted of DUI (highest rate) and DUI (controlled substances). 75 Pa.C.S § 3804(c).

[8] The Pennsylvania Commonwealth Court has held that **Birchfield** did not affect Pennsylvania's ability to impose civil license suspension for refusal to submit to a blood test. **Boseman v. Commonwealth, Dep't of Transportation, Bureau of Driver Licensing**, 157 A.3d 10, 21 (Pa. Cmwlth. Ct. 2017).

"significantly" more intrusive nature of blood tests. Moreover, the Court considered and rejected the argument that warrantless blood tests should be permissible as searches incident to arrest because they can detect substances other than alcohol. Rather, the Court concluded that, in such situations, the police may obtain a warrant, or, if time does not allow, pursue a blood test under the exigency exception to the warrant requirement. Further, the Court upheld the implied-consent exception to the warrant requirement for blood tests, as long as such consent is based on the prospect of only civil and evidentiary consequences, and not criminal penalties.

We therefore disagree with the Commonwealth that ***Birchfield*** is inapplicable to cases in which a driver has been arrested for a drug-related DUI. No matter the substance suspected of affecting a particular DUI arrestee, ***Birchfield*** requires that a blood test be authorized either by a warrant (or case-specific exigency), or by individual consent not based on the pain of criminal consequences.

## II. Ennels' Consent

The Commonwealth next contends that, unlike ***Evans***, Ennels' consent was voluntary because the DL-26 form read to Ennels accurately reflected the penalties applicable to drug-related DUI convictions. In particular, it argues that because the enhanced criminal penalties for refusal referenced

in the form[9] are the same as the penalties for drug-related DUI, Ennels was not actually threatened with additional punishment for refusal and so his consent did not run afoul of **Birchfield**. This argument is perhaps an understandable response to **Birchfield**'s enormous impact on DUI investigations, particularly those that pre-dated that decision. ***See, e.g.,*** David J. Shrager, **Birchfield** *Ruling Disrupts Longstanding DUI Procedures*, 18 Lawyers J. 5, at 1 (Allegheny Cty. Bar Ass'n Sept. 2, 2016) (noting "county prosecutors and police agencies struggle to determine how to properly prosecute the nearly 50,000 annual DUI arrests"). Nevertheless, we find it unpersuasive.

The DL-26 form read to and signed by Ennels informed him that:

> If you refuse to submit to the chemical test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence, you will be suspended for up to 18 months. **In addition, if you refuse to submit to the chemical test, and you are convicted of violating Section 3802(a)(1) (relating to impaired driving) of the Vehicle Code, then, because of your refusal, you will be subject to more severe penalties set forth in Section 3804(c) (relating to penalties) of the Vehicle Code. These are the same penalties that would be imposed if you were convicted of driving with the highest rate of alcohol, which include a minimum of 72 consecutive hours in jail and a minimum fine of $1,000.00, up to**

---

[9] The Pennsylvania Department of Transportation has modified the DL-26 form in light of **Birchfield**.

> **a maximum of five years in jail and a maximum fine of $10,000.**

Commonwealth's Br. in Opposition to Defendant's Motion for Suppression at Ex. A (emphasis added).[10]

The Vehicle Code provides penalties for DUI, including:

> **(c) Incapacity; highest blood alcohol; controlled substances.--**An individual **who violates section 3802(a)(1)[11] and refused testing of blood or breath or an individual who violates section 3802(c) or (d)[12]** shall be sentenced as follows:

_____

[10] The DL-26 form contained the warnings provided in Pennsylvania's implied-consent law, which states that a person's license may be suspended if a person refuses a requested blood test, 75 Pa.C.S § 1547(b), and that a person faces increased criminal penalties if he or she refuses a blood test and is later convicted of DUI (general impairment), *see id.* § 1547(2)(ii); *id.* § 3804(c) (providing sentencing ranges for "[a]n individual who violates section 3802(a)(1) and refused testing of blood or breath or an individual who violates section 3802(c) or (d)").

[11] Section 3802(a)(1) of the Vehicle Code provides:

> **General Impairment. –** (1)  An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(a)(1).

[12] Section 3802(c) of the Vehicle Code provides:

> **High rate of alcohol.--**An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.10% but less than 0.16% within two

*(Footnote Continued Next Page)*

(1) For a first offense, to:

> (i) undergo imprisonment of not less than 72 consecutive hours;

> (ii) pay a fine of not less than $1,000 nor more than $5,000;

> (iii) attend an alcohol highway safety school approved by the department; and

> (iv) comply with all drug and alcohol treatment requirements imposed under sections 3814 and 3815.

75 Pa.C.S § 3804(c)(1) (emphasis added).

Accordingly, under section 3804(c) of the Vehicle Code, a person who is convicted of DUI (general impairment), but who refused a blood test, is subject to the same penalties as a person convicted of DUI (highest rate of alcohol) or DUI (controlled substance). Persons convicted of DUI of a controlled substance are subject to the same penalties whether or not they consented to a blood test.

*(Footnote Continued)* ─────────────

> hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

*Id.* § 3802(c).

Section 3802(d) of the Vehicle Code, titled "Controlled substances," provides that "[a]n individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances." Those circumstances include having "any amount" of certain controlled substances "in the individual's blood"; *id.* § 3802(d)(1), and being "under the influence of a drug or combination of drugs," or "under the combined influence of alcohol and a drug or combination of drugs," "to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle," *id.* § 3802(d)(2) and (3).

Our Supreme Court has applied the following standard to determine whether an individual has validly consented to a chemical test:

> In determining the validity of a given consent, the Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice — not the result of duress or coercion, express or implied, or a will overborne — under the totality of the circumstances. The standard for measuring the scope of a person's consent is based on an objective evaluation of what a reasonable person would have understood by the exchange between the officer and the person who gave the consent. Such evaluation includes an objective examination of the maturity, sophistication and mental or emotional state of the defendant. Gauging the scope of a defendant's consent is an inherent and necessary part of the process of determining, on the totality of the circumstances presented, whether the consent is objectively valid, or instead the product of coercion, deceit, or misrepresentation.

**Commonwealth v. Smith**, 77 A.3d 562, 573 (Pa. 2013) (internal citations and quotation marks omitted).

Recently, in **Commonwealth v. Evans**, this Court addressed Pennsylvania's implied-consent law in light of **Birchfield**. In **Evans**, the appellant consented to a blood draw after a law enforcement officer told him that refusal could result in enhanced criminal penalties.[13] 153 A.3d at 325-26. The trial court denied the appellant's motion to suppress the blood-test

---

[13] In **Evans**, the officer advised the defendant of the implied-consent warnings, which are the same as the warnings contained in the DL-26 form read to, and signed by, Ennels.

- 15 -

results and the appellant was convicted of DUI (highest rate of alcohol) and DUI (general impairment). *Id.* at 326. This Court vacated the judgment of sentence and remanded to the trial court for a reevaluation of the appellant's consent. *Id.* at 331. We reasoned that Evans consented only after he received a warning that was "partially inaccurate" because the warning informed him that he would face enhanced criminal penalties for refusing to do so,[14] and such penalties for refusal are unconstitutional under *Birchfield*. *Id.*; *see also Giron*, 155 A.3d at 639-40.

Here, Ennels was charged with both DUI (controlled substance) and DUI (general impairment). Accordingly, the DL-26 form warned him that, for at least one of the charges, he faced enhanced criminal penalties if he refused to submit to the blood test.

Further, even if the DUI charges related only to controlled substances, we would conclude that the trial court did not err in finding Evans' consent was involuntary. The DL-26 form read to and signed by Ennels informed him that he would face enhanced penalties if he refused the blood test. In particular, it informed him that if he refused, he would face a minimum of 72 hours in jail and a $1,000.00 fine and a maximum of 5 years' in jail and a $10,000 fine, **based on his refusal**. That those happened to be the same

---

[14] The warnings were only "partially inaccurate" because they also warned the individual that his or her license could be suspended, and implied consent to a search may be based on such a warning. *See Birchfield*, 136 S.Ct. at 2185.

penalties for DUI (controlled substance) is irrelevant to the voluntary-consent analysis. Although the form identified the applicable statutes, it did not mention the penalties for DUI of a controlled substance, or that the enhancements applied only to those convicted of DUI of alcohol. Under the totality of the circumstances, a reasonable person would believe that the enhanced penalties applied if he refused the chemical test and later was convicted, regardless of whether he was convicted of an alcohol-related DUI or a drug-related DUI. As **Birchfield**, **Evans**, and **Giron** make clear, implied consent to a blood test cannot lawfully be based on the threat of such enhanced penalties.

The dissent would reverse because "there simply was no threat of enhanced criminal penalties for [Ennels'] refusing to consent to a blood draw," Dissenting Op. at 6, and because Ennels will "[not] receive an enhanced penalty if he ultimately is convicted of driving under the influence of controlled substances," *id.* at 6-7. Respectfully, these arguments miss the point. First, Ennels was charged with both DUI (controlled substances) and DUI (general impairment). Were he convicted only of general impairment after refusing the blood test, then but for **Birchfield** he would in fact have faced an enhanced penalty. 75 Pa.C.S § 3804(c)(1). Second, even if there had been "no threat" that Ennels would receive an enhanced penalty for refusal, because the statutory penalty for refusal was the same as that for DUI (controlled substances), Ennels certainly was **threatened** with an enhanced penalty. And that's the point. **Birchfield** makes plain

- 17 -

that the police may not **threaten** enhanced punishment for refusing a blood test in order to obtain consent, 136 S.Ct. at 2186; whether that enhanced punishment is (or can be) ultimately imposed is irrelevant to the question whether the consent was valid.

Accordingly, because Ennels consented to the blood draw after being informed that he faced enhanced criminal penalties for failure to do so, the trial court did not err in finding that Ennels' consent was invalid.

Order affirmed.

Judge Shogan joins the Opinion.

President Judge Emeritus Stevens files a Dissenting Opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/11/2017