J-S01007-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
       v.   :
  :
  :
MELVIN ORLANDO CAMP,   :
  :
      Appellant   :   No. 791 MDA 2017

Appeal from the Judgment of Sentence April 12, 2017
in the Court of Common Pleas of Bradford County,
Criminal Division at No(s): CP-08-CR-0000537-2016

BEFORE:  GANTMAN, P.J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:         **FILED MARCH 21, 2018**

Melvin Orlando Camp ("Camp") appeals from the judgment of
sentence imposed following his conviction of driving under the influence
("DUI") of a controlled substance. ***See*** 75 Pa.C.S.A. § 3802(d)(2). We
affirm.

The trial court set forth the relevant underlying facts as follows:

On February 7, 201[6], [around 4:00 pm.,] Trooper [Anthony]
Caputo [("Trooper Caputo")] was dispatched to a 2[-]vehicle
crash in Rome Township. Upon arriving at the scene, he was
interviewing both parties involved in the accident and detected
signs of impairment in [Camp]. He detected slurred speech,
constricted pupils and body tremors. He administered
standardized field sobriety tests and concluded [that Camp] was
under the influence of a narcotic. Trooper Caputo reached this
conclusion through his training and experience, the signs set
forth above, raised taste buds in the back of tongue indicating
recent use of a stimulant, [horizontal gaze nystagmus ("HGN")]
test indicating no smooth and equal tracking of eyes, missed
steps, unable to understand instructions, lack of smooth pursuit
in both eyes, unable to keep balance while performing walk and

turn test, body was shaking, raised arms and put foot down while performing one leg stand. [Camp] was then placed in custody for suspicion of [DUI] and was transported for a blood draw. Blood was unable to be drawn. Trooper [Caputo] asked for a Drug Recognition Expert [("DRE")]. [Camp] did advise Trooper [Caputo] that he was taking Oxycodone for back pain and that it was prescribed. On cross[-]examination, Trooper [Caputo] agreed that if [Camp] had physical problems it could influence whether the tests could be passed.

Corporal [Joseph] Mitchell [("Corporal Mitchell")] is a [DRE]. Training to become a DRE is through the State Police and other organizations involving multiple trainings: *i.e.*[,] a 3[-]day course learning drug categories, general indicators of each drug, etc.; a 10[-]day plus 7 days at the Academy and a final exam; 7 days at a drug rehabilitation center conducting evaluations on individuals arriving who are impaired; a 2[-]day course at [the] [A]cademy and [a] final exam.

Corporal Mitchell conducted the drug recognition evaluation. The test takes approximately 45 minutes. Initially[,] questions are asked to rule out a medical emergency, epilepsy, diabetic shock, brain, traumatic injury or physical defect. [Camp] did tell Corporal [Mitchell] that he had a back injury and surgery and arthritis. [Camp] also told Corporal [Mitchell] the medications he was taking, Vicodin, Valium, Xanax, [] and he had consumed marijuana. Corporal [Mitchell] noted that [Camp's] perception of time was impaired; his speech was slurred; face was flushed; coordination was poor, feet were dragging; eyes had red conjunctivae (an indicator for marijuana use) droopy eye lids; tremors in the arms. Further, HGN test, Romberg balance, walk and turn and one[-]leg stand was attempted[,] but [Camp] could not do [the tests]. Corporal [Mitchell] concluded that [Camp] was under the influence of a drug to the extent that it rendered him incapable of safe driving-drug categories of [central nervous system ("CNS")] depressant, narcotic analgesic and CNS stimulant.

[Camp] testified that he had a bad car accident in 1996 with bad head injuries.

Trial Court Opinion, 8/8/17, at 1-3 (citations omitted).

Following a bench trial, Camp was convicted of DUI of a controlled substance. The trial court sentenced Camp to five days to six months in prison, plus costs and fines. Camp filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement.

On appeal, Camp raises the following questions for our review:

1.    Whether the [trial c]ourt erred in failing to dismiss the charges against [Camp] after learning that [Camp] was disabled and prescribed to consume the prescription drug alleged to be in his system when operating his motor vehicle on February 7, 2016?

2.    Whether the trial [c]ourt erred in failing to dismiss the charges against [Camp] after learning that [Camp] was disabled and could not physically perform the field sobriety tests as demanded by the State Police on February 7, 2016?

3.    Whether the [trial c]ourt erred in not ruling that the evidence was insufficient as a matter of law to establish [Camp's] guilt beyond a reasonable doubt on the charges?

4.    Whether the [trial c]ourt erred in not finding that [Camp] was innocent as a matter of law[,] as the Commonwealth did not meet its burden of proof that [Camp] operated his motor vehicle while impaired?

5.    Whether the [trial c]ourt erred in finding [Camp] guilty of the criminal charges because the [trial c]ourt's verdict was based on insufficient evidence and/or was against the weight of the evidence?

6.    Whether the evidence submitted at trial by the Commonwealth was insufficient as a matter of law to establish [Camp's] guilt beyond a reasonable doubt on the charges?

Brief for Appellant at 4-5.[1]

Initially, Camp contends that the evidence was insufficient to support his DUI conviction. *Id.* at 10, 11-12, 14-20. Camp argues that the evidence did not demonstrate that his ability to drive the vehicle was impaired, as Trooper Caputo never observed Camp driving and Camp's vehicle was not responsible for the accident. *Id.* at 14-15, 18, 19; *see also id.* at 16, 18 (arguing that Camp's wife's testimony demonstrated that Camp was not driving erratically). Camp asserts that he was prescribed Oxycodone for back pain, and that his back problems prevented him from successfully performing the sobriety tests. *Id.* at 15, 16, 17, 19. Camp further asserts that Trooper Caputo's claim that he was slurring his speech is not reliable because Trooper Caputo had never met Camp prior to the stop. *Id.* at 14, 18. Camp claims that his admission to taking prescription drugs does not render him incapable of driving his vehicle and does not support a finding of DUI. *Id.* at 18, 20.

Our standard of review for sufficiency of the evidence challenges is well-settled:

---

[1] While Camp raises six questions for our review, his Argument includes a single section wherein he raises sufficiency and weight of the evidence claims. *See* Pa.R.A.P. 2119(a) (stating that "[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displaced—the particular point treated therein."). We will review each of these claims in turn.

Whether, viewing all the evidence admitted at trial in the light most favorable to the Commonwealth as the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

**Commonwealth v. Eichler**, 133 A.3d 775, 787 (Pa. Super. 2016) (brackets

and citation omitted).

Section 3802 of the Vehicle Code provides, in relevant part, as follows:

**(d) Controlled substances.**—An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

* * *

(2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(d)(2).

Section 3802(d)(2) "does not require proof of a specific amount of a drug in the driver's system. It requires only proof that the driver was under the influence of a drug or combination of drugs to a degree that the ability to drive is impaired." **Commonwealth v. Tarrach**, 42 A.3d 342, 345 (Pa. Super. 2012); **see also Commonwealth v. Graham**, 81 A.3d 137, 145

(Pa. Super. 2013) (stating that "the focus of [s]ection 3802(d)(2) is not upon the type of evidence introduced, but upon whether the totality of the evidence proved that the defendant's inability to drive safely was the result of the influence of a drug or combination of drugs.") (citation, quotation marks, and emphasis omitted). Further, section 3802(d)(2) "does not limit, constrain, or specify the type of evidence that the Commonwealth can proffer to prove its case." *Commonwealth v. Griffith*, 32 A.3d 1231, 1239 (Pa. 2011).

Here, Trooper Caputo testified that on February 7, 2016, he was dispatched to a two-vehicle crash in Rome Township. N.T., 1/27/17, at 3-4, 9-10. Upon arriving at the scene, Trooper Caputo interviewed both parties, including Camp. *Id.* at 4. With regard to Camp, Trooper Caputo detected signs of impairment including slurred speech, constricted pupils, and body tremors. *Id.* at 4, 11-12, 13, 16; *see also id.* at 4 (wherein Trooper Caputo observed raised taste buds in the back of Camp's tongue, which demonstrates recent use of drugs, specifically a stimulant). Trooper Caputo administered standardized field sobriety tests. *Id.* at 4, 5. Trooper Caputo stated the following with regard to the sobriety tests:

> For HGN, I observed lack of smooth pursuit, in both [Camp's] right and left eyes. In the walk and turn, I observed [Camp] couldn't keep his balance while performing the test. [Camp] stopped walking, he missed heel to toes, uh, steps off the line and raised his arms, and while performing the test, he had, his body was shaking and he had stiffness with his muscle. The one leg stand, - he raised his arms and he put his foot down, and he used both feet to[o] while using that test, he tried to do both.

*Id.* at 5-6; *see also id.* at 20-21 (wherein Trooper Caputo admits that a person with back problems would have difficulty performing the tests). As a result of the failed tests, Trooper Caputo arrested Camp based upon his belief that Camp was under the influence of narcotics. *Id.* at 4, 6-7. Trooper Caputo transported him to Towanda Memorial Hospital for a blood draw, where the nurse was unable to draw blood from Camp on four separate occasions. *Id.* at 6, 24, 28. As a result, Trooper Caputo requested a DRE. *Id.* at 6, 26-27. While waiting for the DRE, Camp indicated that he was prescribed Oxycodone for back pain. *Id.* at 6, 19.

Corporal Mitchell, the DRE, stated that an evaluation, involving a series of tests, questions and observations of the individual defendant, is used to determine whether an individual is impaired, and whether the impairment is related to a drug. *Id.* at 31-32. Corporal Mitchell testified that prior to performing the evaluation, he provided Camp with *Miranda*[2] warnings. *Id.* at 38, 59-60. In response to questioning by Corporal Mitchell, Camp indicated that he had previously sustained a back injury and that he was taking various prescription medications and had smoked marijuana. *Id.* at 41, 42, 44, 61-62, 64, 67, 69; *see also id.* at 51, 69 (wherein Corporal Mitchell stated that Camp admitted to consuming four Vicodin pills in the morning). Corporal Mitchell stated that Camp's

_____

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966)

perception of time was impaired; his speech was raspy and slurred; his face was flushed; his eyes were bloodshot; his eyelids were droopy; he was experiencing tremors; and his coordination was poor. *Id.* at 42-45. Corporal Mitchell also conducted physical tests, including HGN, walk and turn, finger to nose, and one leg stand. *Id.* at 49, 61-64, 65-69. Corporal Mitchell indicated that Camp had difficultly completing the tests. *See id.* Taking the circumstances in total, Corporal Mitchell concluded that Camp was under the influence of drugs and was incapable of safely driving a vehicle. *Id.* at 53-54.

The trial court found the testimony provided by Trooper Caputo and Corporal Mitchell to be credible. *See* Trial Court Opinion, 8/8/17, at 4. Thus, we conclude that the evidence presented at trial, viewed in the light most favorable to the Commonwealth as the verdict winner, was sufficient to establish that Camp was under the influence of a drug that impaired his ability to drive safely. *See Griffith*, 32 A.3d at 1240 (stating that the evidence was sufficient to support defendant's conviction under section 3802(d) where the officer observed defendant's behavior and inability to perform the field sobriety tests, and defendant admitted to taking prescription medication the morning of her arrest); *see also Commonwealth v. Mobley*, 14 A.3d 887, 890 (Pa. Super. 2011) (stating that "[t]he Commonwealth may prove that a person is incapable of safe driving through the failure of a field sobriety test."). Moreover, even if the

drugs were prescribed to Camp, this fact would not entitle Camp to relief as the statute in question does not provide an exception for prescribed medication. Accordingly, Camp's sufficiency claims are without merit.

Camp also contends that the verdict was against the weight of the evidence. Brief for Appellant at 11, 13-14, 19.

Preliminarily, we must address whether Camp properly preserved this claim for our review.

> [A] weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. Pa.R.Crim.P. 607; ***Commonwealth v. Priest***, 18 A.3d 1235, 1239 (Pa. Super. 2011). Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion. ***Commonwealth v. Sherwood***, 603 Pa. 92, 982 A.2d 483, 494 (2009).

***Commonwealth v. Lofton***, 57 A.3d 1270, 1273 (Pa. Super. 2012).

Here, Camp did not present a challenge to the weight of the evidence in his post-sentence Motion, nor did he preserve the claim elsewhere. Accordingly, he waived this claim. ***See id.***[3]

---

[3] Even if Camp had not waived his weight of the evidence challenge, we would have determined that it lacks merit, as the verdict does not shock our collective conscience, for the reasons set forth in the trial court's Opinion. ***See*** Trial Court Opinion, 8/8/17, at 5; ***see also Commonwealth v. Miller***, 172 A.3d 632, 643 (Pa. Super. 2017) (stating that appellant's weight of the evidence claim was without merit where appellant merely asked this Court to reweigh the evidence and testimony in his favor).

Based upon the foregoing, we conclude that Camp's claims are without merit.[4]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/21/2018

---

[4] We also note that the holding in **Birchfield v. North Dakota**, 136 S. Ct. 2160 (2016), is inapplicable to the instant case. The **Birchfield** Court held that, because the taking of a blood sample is a search within the meaning of the Fourth Amendment to the United States Constitution, police officers may not compel the taking of a blood sample without a search warrant, absent an applicable exception. **See id.** at 2185. After concluding that "the search incident to arrest doctrine does not justify the warrantless taking of a blood sample," **id.**, the **Birchfield** Court considered whether implied-consent laws, which require cooperation with blood-alcohol testing as "a condition of the privilege of driving on state roads," could provide an exception to the warrant requirement consistent with the federal constitution. **Id.** at 2169, 2185-86. The **Birchfield** Court held that, although implied-consent laws that impose civil penalties and evidentiary consequences for refusing to consent are constitutional, implied-consent laws that impose *criminal* penalties for refusing to consent to a blood test are unconstitutional because "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." **Id.** at 2185-86. This Court recently determined that **Birchfield** extends to cases where a "driver has been arrested for a drug-related DUI." **Commonwealth v. Ennels**, 167 A.3d 716, 721 (Pa. Super. 2017). However, **Birchfield** is inapplicable to the instant case as blood could not be drawn from Camp, and thus, the conviction was not based upon information from a warrantless blood draw.