J-A25015-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                                       :             PENNSYLVANIA
                                                       :

                 v.                                           :
                                                       :

JOSEPH D. HERDER                     : 
                                                       :

                 Appellant                :      No. 3401 EDA 2017

Appeal from the Judgment of Sentence March 4, 2015
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0002997-2014,
CP-09-CR-0003707-2014

BEFORE: PANELLA, J., DUBOW, J., and KUNSELMAN, J.

MEMORANDUM BY DUBOW, J.:                  **FILED MAY 14, 2019**

Appellant appeals from the Judgment of Sentence imposed following bench trials on various offenses related to stolen vehicles. He challenges the denial of his suppression motion, averring that the evidence obtained after a warrantless search of his cell phone was inadmissible, even under the theory of inevitable discovery. After careful review of the record and relevant case law, we affirm.

We glean the following facts from the evidence presented at the suppression hearing. On December 3, 2013, Henry Lovett reported to the Middletown Township Police Department that his 2013 ATV had been stolen from his garage in Langhorne. Approximately an hour later, Timothy Cross called 911 to report that two males had been riding an ATV around the Lowe's parking lot in Bensalem. When Bensalem Police Officer Dornisch responded,

he did not see an ATV, but he did encounter Appellant and Andrew Cychowski. When asked, the two men denied that they had been riding an ATV in the lot. Officer Dornisch obtained biographical information from both men, and the men drove out of the parking lot. Shortly thereafter, Cross approached the Officer and told him that he had seen Appellant riding the ATV in the parking lot, and then watched as Appellant hid the ATV in the woods behind Lowe's.

Officer Dornisch found the stolen ATV in the woods. He then contacted Cychowski, who informed him that Appellant had texted him asking if he wanted to buy an ATV. Most importantly, Cychowski told the police officer that Appellant had sent the text messages and photos from telephone #215-303-1828. Appellant told Cychowski that he had taken the ATV from a house near the Oxford Valley Mall.

Pursuant to an arrest warrant, Bensalem Police Officers arrested Appellant on December 16, 2013. As part of their search incident to arrest, officers recovered Appellant's cell phone from Appellant's person. Detective Greg Jackson opened the settings on the phone to place it in airplane mode and to identify the owner of the device. In addition, Detective Jackson observed photographs of various ATVs and motorcycles on the phone. Detective Jackson subsequently obtained a search warrant for the phone.

Within two weeks after Appellant's arrest, Detective Eric Richter from the Perkasie Borough Police Department contacted Detective Jackson because he had heard from Appellant's state parole officer that Appellant was in custody on an arrest warrant from the Bensalem Police Department. Detective

Richter was investigating a report of a stolen vehicle and, in connection with that investigation, he had reviewed a surveillance tape from private citizen camera images and recognized Appellant, with whom he "had previous contact … on multiple occasions," from the images. N.T. – Suppression, 11/17/14, at 54. Detective Richter asked Detective Jackson if Appellant had had a cell phone on him and, if so, what the phone number was so that he could confirm the number for purposes of obtaining a subpoena for cell tower information pertaining to Appellant's telephone number. Detective Jackson informed Detective Richter that he had seen photographs in Appellant's phone that may be useful in Detective Richter's case, but he was awaiting a search warrant.

On January 7, 2014, Detective Jackson obtained a search warrant for Appellant's cellphone. Three days later, Detective Richter received a compact disk with the photographs from Appellant's cell phone. *See* Trial Ct. Op., dated 3/27/18, at 5-6 (citing to N.T. - Suppression).

The Commonwealth charged Appellant in Criminal Information No. 3707-2014 pertaining to the Perkasie Borough crimes with, *inter alia*, two counts of Receiving Stolen Property and two counts of Theft from a Motor Vehicle;[1] in Criminal Information No. 2997-2014, the Bensalem case, it charged him with, *inter alia*, one count of Receiving Stolen Property.[2]

---

[1] 18 Pa.C.S. §§ 3925(a) and 3934(a), respectively.

[2] 18 Pa.C.S. §3925(a).

Appellant filed a pre-trial Motion to Suppress the evidence recovered from his cellphone, averring that police officers obtained it as a result of an improper warrantless search conducted at the time of his arrest. The suppression court held a hearing on November 17, 2014, at which Detectives Jackson and Richter testified.

After the hearing, the court made the following findings and conclusions:

> . . . I adopt as the findings of fact in terms of the events that led up to the search of the phone the facts that are asserted in the Affidavit of Probable Cause with the addition that I also find that Detective Jackson obtained the defendant's phone after searching his person . . . .  He placed the cellphone on airplane mode to prevent any of the evidence on the phone from being altered in any way or destroyed in any way.  The detective, however, looked at images in the phone and determined the phone number of the phone prior to obtaining a warrant.  I make – he then obtained a warrant which has been identified as [Exh.] CS-1.
>
> I make the following conclusions of law:  the placing of the phone on airplane mode—well, first of all, it is conceded that the search incident to arrest itself of the defendant's person was lawful.  The placing of the phone on airplane mode was lawful to prevent the destruction of evidence.  The search of the phone as to the ownership of the phone as well as the search of any photographs on the phone was not lawful. I find that, however, had the information regarding the phone number been excised from the warrant, there still would have been probable cause – probable cause of the search of the phone itself, and that the discovery of the contents of the phone was inevitable.

N.T.-Suppression, 11/17/14, at 91-92.

The court then denied Appellant's Motion to Suppress and Appellant proceeded to non-jury trials in both cases.  The court found him guilty of the above charges and sentenced him on March 4, 2015, to an aggregate term of

3 to 7 years' incarceration. Appellant did not file a Post-Sentence Motion or seek direct review. After PCRA proceedings, the court reinstated Appellant's direct appeal rights *nunc pro tunc*.

Appellant timely appealed on October 16, 2017. The court appointed new counsel to represent Appellant in his appeal. Both Appellant and the trial court subsequently complied with Pa.R.A.P. 1925.

Appellant presents the following questions for our review:

1. Did the [t]rial court err in failing to suppress the use of any of the contents of the [Appellant's] cellular phone that was removed from the [Appellant's] person by law enforcement officers at the time of his arrest as well as suppressing all evidence gathered in reliance of such search as the fruit of the poisonous tree[?] Specifically, although the [t]rial [c]ourt found that the search of the phone was unlawful, the [c]ourt also ruled that pictures, Facebook/text messages, call data and other personal information which was seen by law enforcement prior to obtaining a warrant was admissible during [Appellant's] trial in the above-captioned matter. But for the illegal search and subsequent seizure of [Appellant's] phone, there was insufficient evidence to convict [Appellant] of the crimes in either of the above-captioned cases[.]

2. Did the [t]rial [c]ourt err when it accepted the Commonwealth's "inevitable discovery" argument that the items on the phone would have been found regardless of the illegal search since such argument was used to justify an illegal search that had already occurred at the time the warrant was sought[?] Specifically, although there were other factors contained in the Affidavit of Probable Cause for the warrant, those factors relied upon the fact that the arresting officer had already searched through [Appellant's] phone without a warrant and seen pictures and other personal data[.]

Appellant's Brief at 7.

Appellant argues that evidence obtained from Appellant's phone, "both before and after the issuance of the search warrant on January 7, 2014, . . .

was subject to exclusion as being the fruit of the poisonous tree." Appellant's Brief at 28. He avers that the inevitable discovery theory is not applicable because the "police were clearly using information they had already obtained from the phone to get the search warrant for the phone." *Id*. at 38. We disagree.

Both of Appellant's issues challenge the denial of his Motion to Suppress and we address them together. Our standard of review applicable to suppression determinations is well-settled. "When reviewing the grant of a suppression motion, we must determine whether the record supports the trial court's factual findings and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Ennels*, 167 A.3d 716, 718 (Pa. Super. 2017) (citation and quotation marks omitted). "We may only consider evidence presented at the suppression hearing." *Id.* In addition,

> Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Jones*, 121 A.3d 524, 526-27 (Pa. Super. 2015) (citation omitted).

Both the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Constitution of the Commonwealth of Pennsylvania protect against warrantless searches and seizures by the government where (1) a person has a subjective expectation of privacy, and where (2) the person's expectation is one that society recognizes as reasonable and legitimate. **Commonwealth v. Duncan**, 817 A.2d 455, 463 (Pa. 2003). A search of a cellphone involving navigating through the menus to obtain the phone's number and other information is considered a search that requires a warrant. **Commonwealth v. Fulton**, 179 A.3d 475, 488 (Pa. 2018). Evidence acquired in violation of a defendant's privacy rights generally requires that it be excluded at trial as "fruit of the poisonous tree." **Wong Sun v. U.S.**, 371 U.S. 471, 487-88 (1963).

However, such evidence may be used against a defendant "if knowledge of the evidence is gained from an independent source" or "the evidence in question would inevitably have been discovered without reference to the police error or misconduct." **Fulton**, **supra** at 489-90 (citations omitted). **See also Commonwealth. v. Gonzalez**, 979 A.2d 879, 890 (Pa. Super. 2009) (noting that "[u]nder the inevitable discovery exception to the exclusionary rule, the fact that challenged evidence was obtained as a result of illegal government conduct does not end the inquiry into whether the evidence was admissible at trial"). **See**, **e.g.**, **Commonwealth v Santiago**, 160 A.3d 814, 829 (Pa. Super. 2017) (applying the independent source theory—where the testifying

officer had both interacted with the appellant prior to illegally searching the appellant's cell phone to identify him, and identified the appellant in court—by concluding that the out-of-court identification was properly suppressed but reversing the suppression of the officer's in-court identification because the officer had interacted with the appellant prior to making his out-of-court identification from the illegal search of his cellphone).

There is no dispute here that Detective Jackson lawfully removed the cell phone from Appellant upon his arrest. There is likewise no dispute that Detective Jackson initially conducted an unlawful search of Appellant's cell phone when he opened the settings to determine the cell phone number and then reviewed stored photographs. Thus, our review in this case is limited to whether the suppression court erred in applying the inevitable discovery rule to the evidence.

In **Gonzalez**, **supra**, this Court concluded that the exclusionary rule did not apply because once facts established that the police officer had probable cause to arrest the appellant on drug charges, the officer had facts supporting "the issuance of a warrant to search Appellant's apartment, whereby he inevitably would have discovered the other items of contraband in Appellant's room." **Id**. at 891.

In the case before us, the suppression court observed "that despite Detective Jackson's initially unlawful search, the Commonwealth would have inevitably discovered the contents of Appellant's cellphone pursuant to a valid

search warrant" based on his interview with Andrew Cychowski, who "confirmed that Appellant had sent text and picture messages via cellphone to facilitate the sale of an ATV. This conversation and the facts already known to Detective Jackson prior to December 16, 2013, provided a sufficient factual basis to support his search warrant." Trial Ct. Op., dated 3/27/18, at 12. The court also noted that, "[w]ith the exception of Appellant's phone number, Detective Jackson confirmed that he did not rely on any evidence observed during his initial preview of the cell phone[, conducted immediately after Appellant's arrest,] to write the search warrant's probable cause affidavit." *Id*. The suppression court, thus, found "that there was probable cause to support the search warrant absent any information that Detective Jackson may have gleaned during his initial preview," and "that probable cause was established even if the phone number was excised from the warrant. Appellant conceded these factual findings on the record." *Id*. at 13 (citations to N.T.-Suppression omitted). The court further noted:

> Finally, regarding Criminal Information No. 3707-2014, the suppression record reveals that Detective Richter did not examine the cellphone's contents until January 10, 2014, three days after the search warrant's lawful execution. As a result, the derivative evidence and statements obtained in Detective Richter's investigation are not subject to suppression as fruit of the poisonous tree.

*Id*. at 12-13 (citations to N.T.-Suppression omitted).

The suppression court further concluded that "this evidence would have been inevitably discovered pursuant to a lawful search warrant, which was in

fact obtained. Therefore, the contents of Appellant's cellphone are not subject to the exclusionary rule, and the Motion to Suppress was denied." ***Id***. at 13.

The record supports the court's factual findings and we agree with the suppression court's legal conclusion. Although the search warrant contained Appellant's cell phone number which the police unlawfully obtained when police arrested Appellant, Cychowski had already provided Appellant's cell phone number to the investigators before the police applied for the search warrant. Also, the search warrant identified the cell phone as one police officers found on Appellant's person when they arrested him.

Moreover, the search warrant contained sufficient evidence that Appellant had committed a crime: (1) Andrew Cychowski's identification of Appellant by name; his showing investigating officers the texts and pictures Appellant had sent him in seeking to sell the ATV, which Appellant told Cychowski he had taken from a house; and his providing the investigators with Appellant's cell phone number that was used to send the texts and photos to Cychowski; (2) Cross's description of Appellant and Appellant's actions in hiding the ATV; and (3) the investigators' subsequent discovery of the stolen ATV in the woods which matched the description provided by the victim of the crime, Cross, and Cychowski's cell phone photos.

Thus, similar to ***Gonzalez***, ***supra***, the cell phone number and the photos of the stolen items that police officers saw on the cell phone prior to the issuance of the search warrant would have been inevitably discovered in

the cell phone that had been lawfully removed from Appellant's person upon his arrest.

Accordingly, we conclude the suppression court properly applied the law to the facts in denying the suppression of the evidence obtained from Appellant's cell phone. We, thus, affirm.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/14/19