OPINION BY STEVENS, P.J.E.:
The Commonwealth of Pennsylvania appeals from the order entered by the Court of Common Pleas of Philadelphia County granting the suppression motion filed by Appellee Timothy Trahey. The Commonwealth argues that the trial court erred in finding that the warrantless draw of Appellee's blood was not justified by the exigent circumstances doctrine. After careful review, we reverse and remand for further proceedings.
On Friday, September 4, 2015, at approximately 9:15 p.m., at the start of Labor Day weekend, 911 dispatchers received a report that a car had struck a cyclist on the 4900 block of Wynnewood Avenue in Philadelphia. However, police were not dispatched to the accident scene until 10:01 p.m. due to the lower priority of auto accidents on the hierarchy of circumstances in which Philadelphia Police Officers are dispatched to emergency situations.
At approximately 10:04 p.m., three minutes after their dispatch, Officers Christopher Marchesani and Derrick Lewis arrived at the accident scene and observed a smashed bicycle and a pickup truck that was partially on the sidewalk. The truck's hood and grill were damaged, its windshield was shattered, and the windshield had a hole on the passenger's side. The officers also noticed blood in the street. The officers approached a group of bystanders, *447 who informed them that Appellee had been driving the truck and that the cyclist had already been transported to the hospital. The cyclist sustained fatal injuries from the crash and did not survive.
Officer Marchesani approached Appellee, who admitted that he was driving the truck that struck the cyclist. As Officer Marchesani walked with Appellee to his vehicle to get his driver's license and registration, he noticed Appellee had a strong odor of alcohol, his speech was slow and slurred, his eyes were glassy, and his gait was unsteady. This was the first point at which the officers realized that this incident was likely a DUI-related crash as they had not been informed by the 911 dispatcher of the possibility that Appellee was intoxicated. Based on his observations, Officer Marchesani placed Appellee under arrest for DUI.
After spending approximately thirty minutes at the accident scene, the officers left to transport Appellee to the police headquarters, but were called back to the accident scene by the Accident Investigation District (AID), a specialized unit that investigates accidents that involved critical injuries. Three AID officers, Officer Patrick Farrell, Officer Daniel Shead, and Officer Hughes, took responsibility for investigating the scene of the accident.[1] AID Officer Farrell observed signs of Appellee's intoxication and was informed that nearly ninety minutes had passed since the crash. Officer Farrell become concerned with the time constraints associated with DUI testing as Appellee's blood testing would have to be completed within two hours of the crash to accurately determine his blood chemistry at the time of the accident. Therefore, at 10:49 p.m., Officer Farrell sent Appellee directly for blood testing at the police headquarters.
On that evening, AID Officer John Zirilli was assigned to administer the blood and breath tests at the Police Detention Unit. Officer Zirilli sought to obtain a blood test from Appellee as a blood test is routinely administered in relation to auto accidents where a driver, passenger, or pedestrian sustained serious or fatal injuries. Officer Zirilli knew it was important to administer a blood test to Appellee within two hours of the accident. Thereafter, Officer Zirilli gave Appellee warnings from Pennsylvania's implied consent statute that included advising him of criminal consequences a DUI suspect would face by refusing to submit to blood testing.
Appellee acknowledged these warnings, gave verbal consent to the blood testing, and signed the applicable 75-439 form. However, Appellee failed to check a box to indicate that he had agreed to submit to the blood test. At approximately 11:20 p.m., about two hours and five minutes after the accident had occurred, Appellee's blood was drawn.
Appellee was subsequently charged with homicide by vehicle while driving under the influence, homicide by vehicle, involuntary manslaughter, and DUI. Appellee filed a pretrial suppression motion, in which he claimed, inter alia , the police had subjected him to an unlawful search by seeking warrantless blood testing.
On February 8, 2017, the lower court held a suppression hearing at which Officers Marchesani, Farrell, Zirilli, and Shead testified. Specifically, AID Officer Shead claimed that the officers would not have had sufficient time to seek a warrant for the chemical testing of Appellee's blood within two hours of the accident. Officer Shead emphasized the significant amount of time that had elapsed before the officers were able to respond to the accident scene *448 and discover that Appellee was likely under the influence of a controlled substance when the accident occurred.
In addition, Officer Shead described in detail the necessary efforts and time an AID officer would have to undertake in order to obtain a warrant for chemical testing. This procedure included driving from the accident scene to AID headquarters, typing an affidavit in support of the warrant request, communicating with the on-call prosecutor for approval of the affidavit, arranging to meet with an available commissioner to consider the warrant application, traveling to arraignment court, waiting for an available commissioner, allowing the commissioner to review the application, and returning to the police headquarters with the approved request. Officer Shead estimated that the entire process could take anywhere from seventy minutes to three hours.
Moreover, Officer Shead also explained that obtaining a warrant in a timely manner in this case would have been extremely difficult as there was no available AID officers to seek a warrant that night. As the crash occurred at the beginning of Labor Day weekend on Friday, September 4, 2015, only five AID officers were working the evening shift. One officer was stationed at the AID headquarters to answer the phone and dispatch other AID officers to particular incidents, Officer Zirilli was stationed at the office to administer chemical testing to all DUI suspects arrested in Philadelphia, and the three remaining officers were assigned to process the incident scenes in a timely manner. The three officers assigned to the field, Officers Hughes, Farrell, and Shead had left the scene of a critical injury vehicle accident to respond to the accident in this case.
At the conclusion of the hearing, the lower court granted Appellee's suppression motion. First, the suppression court found that pursuant to Birchfield v. North Dakota , --- U.S. ----, 136 S.Ct. 1535, 194 L.Ed.2d 601 (2016), Appellee's consent to the blood test was invalid based on the fact that he was warned that his failure to consent could result in criminal penalties if convicted of DUI. While the trial court acknowledged that the officer's warnings were legally correct at the time of Appellee's arrest and chemical testing on September 4, 2015, it concluded that the subsequently-filed Birchfield decision controlled this case and rendered Appellee's consent invalid.
Second, while the suppression court acknowledged the responding officers faced circumstances that placed time constraints on their ability to seek a warrant to obtain useful blood test results, the suppression court refused to address whether exigent circumstances justified the warrantless blood test. The suppression court emphasized that the officers had originally explained that they did not apply for a warrant because they believed Appellee had given valid consent to the blood test by signing the consent form. Therefore, the trial court suppressed the results of the warrantless blood test.
The Commonwealth filed this timely interlocutory appeal as of right, certifying that the order granting Appellee's suppression motion would terminate or substantially handicap the prosecution of this offense. See Pa.R.A.P. 311(d). On appeal, the Commonwealth argues that the lower court erred in suppressing the blood test results as the exigent circumstances exception to the warrant requirement justified the warrantless testing of Appellee's blood. Moreover, the Commonwealth asserts that the suppression court erred in concluding that the exigent circumstances exception could not be applicable because the officers believed Appellee had given valid consent to chemical testing.
*449 In reviewing an appeal from an order granting a suppression motion, we are guided by the following standard:
When the Commonwealth appeals a suppression order, we consider only the evidence from [Appellee's] witnesses together with the portion of the Commonwealth's evidence which is uncontroverted. Our standard of review is limited to determining whether the suppression court's factual findings are supported by the record, but we exercise de novo review over the suppression court's conclusions of law.
Commonwealth v. Snyder , 599 Pa. 656, 963 A.2d 396, 400 (2009) (citations omitted). Further, "[a]ppellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress." Commonwealth v. Stilo , 138 A.3d 33, 35-36 (Pa.Super. 2016) (citation omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." Commonwealth v. Gallagher , 896 A.2d 583, 585 (Pa.Super. 2006) (quotation marks and quotation omitted).
Commonwealth v. Harris , 176 A.3d 1009, 2017 PA Super 402 (2017).
In granting Appellee's suppression motion, the lower court determined that the officers in this case subjected Appellee to an unlawful search when they compelled him to submit to a warrantless blood test. It is well-established that the "administration of a blood test ... performed by an agent of, or at the direction of the government" constitutes a search under both the United States and Pennsylvania Constitutions. Commonwealth v. Evans , 153 A.3d 323, 328 (Pa.Super. 2016) (quoting Commonwealth v. Kohl , 532 Pa. 152, 615 A.2d 308, 315 (1992) ; Schmerber v. California , 384 U.S. 757, 770, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) ).
"Both the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution guarantee individuals freedom from unreasonable searches and seizures." Commonwealth v. Bostick , 958 A.2d 543, 550 (Pa.Super. 2008) (quotation marks and quotation omitted). "[W]arrantless searches and seizures are ... unreasonable per se, unless conducted pursuant to a specifically established and well-delineated exception to the warrant requirement." Id. at 556.
One such exception is if a defendant gives actual consent to a search. Commonwealth v. Riedel , 539 Pa. 172, 179, 651 A.2d 135, 139 (1994). In the instant case, the lower court found Appellee's consent to blood testing was invalid as he had been warned that he would face criminal consequences if he refused to submit to blood testing. The lower court cited to Birchfield , in which the Supreme Court of the United States concluded that "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." Birchfield v. North Dakota , --- U.S. ----, 136 S.Ct. 2160, 2186, 195 L.Ed.2d 560 (2016). However, for the reasons set forth below, we need not discuss whether Appellee gave voluntary consent to the blood draw. Even assuming arguendo that his consent was involuntary, the blood draw evidence was still admissible.
Notwithstanding the decision in Birchfield , the Commonwealth argues that the officers were justified in conducting a warrantless search of Appellee's blood based on the exigent circumstances exception to the warrant requirement. This exception "applies when the exigencies of the situation make the needs of law enforcement *450 so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." Missouri v. McNeely , 569 U.S. 141, 148-49, 133 S.Ct. 1552, 1558, 185 L.Ed. 2d 696 (2013) (emphasis added). The exigent circumstances exception allows officers in certain circumstances to conduct a warrantless search to "prevent the imminent destruction of evidence"; such a search could be deemed reasonable if there is a "compelling need for official action and no time to secure a warrant." Id. at 149, 133 S.Ct. at 1559.
Due to the fact-specific nature of this exception, our courts must evaluate the totality of the circumstances to determine whether a law enforcement officer faced exigent circumstances that justified a warrantless search. Id. In Schmerber , the United States Supreme Court upheld the admission of warrantless, nonconsensual blood test results from an individual suspected of DUI who had been involved in a vehicle accident. The Court concluded that the blood draw was justified by exigent circumstances as the officer "might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened the destruction of evidence." Schmerber , 384 U.S. at 770, 86 S.Ct. at 1835 (some quotation marks omitted). In particular, the Court noted that "the percentage of alcohol in the bloodstream begins to diminish shortly after drinking stops," and that in this case "where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant." Id. at 770-771, 86 S.Ct. at 1836. Limiting its holding to the facts of the record before it, the Supreme Court found that the warrantless blood test in Schmerber was not an unreasonable search under the Fourth Amendment.
Thereafter, in McNeely , the U.S. Supreme Court declined to rule that the natural dissipation of alcohol in the bloodstream alone creates a per se exigency justifying an exception to the warrant requirement for nonconsensual blood testing. The McNeely Court reaffirmed that "in those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so." McNeely , 569 U.S. at 152, 133 S.Ct. at 1561.
However, the Court did recognize that the body's "metabolization of alcohol and the ensuing loss of evidence" are among the factors that must be considered in assessing the totality of the circumstances to determine if a warrantless blood test is justified by exigent circumstances. Id. at 165, 133 S.Ct. at 1568. Moreover, the Supreme Court identified other circumstances that may be relevant to establish whether a warrantless blood test is reasonable, including the need for the police to attend to a related car accident, the procedures in place for obtaining a warrant, the availability of a magistrate judge, and "the practical problems of obtaining a warrant within a timeframe that still preserves the opportunity to obtain reliable evidence." Id. at 164, 133 S.Ct. at 1568. The McNeely Court also envisioned that "technological advances that enable police officers to secure warrants more quickly, and do so without undermining the neutral magistrate judge's essential role as a check on police discretion, [would be] relevant to an assessment of exigency." Id. at 155, 133 S.Ct. at 1562-63.
As mentioned above, the suppression court in this case refused to determine whether the exigent circumstance exception was applicable. Specifically, the lower court reasoned that at the time of *451 Appellee's arrest, the officers did not contemplate justifying their warrantless blood testing on exigent circumstances, but believed that they had obtained Appellee's valid consent to the blood testing.
However, the trial court failed to recognize that it was required to determine whether the warrantless search was objectively reasonable under the Fourth Amendment. McNeely , supra ."Whether a Fourth Amendment violation has occurred turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time, not on the officer's actual state of mind at the time the challenged action was taken." Commonwealth v. Foglia , 979 A.2d 357, 361 (Pa.Super. 2009) (en banc ) (quoting Maryland v. Macon , 472 U.S. 463, 470-71, 105 S.Ct. 2778, 86 L.Ed.2d 370 (1985) ) (emphasis added, some citations omitted). Our Supreme Court has clarified that:
In the Fourth Amendment context, "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." Whren v. United States , 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).
In other words, Fourth Amendment reasonableness is predominantly an objective inquiry. We ask whether the circumstances, viewed objectively, justify the challenged action. If so, that action was reasonable whatever the subjective intent motivating the relevant officials. This approach recognizes that the Fourth Amendment regulates conduct rather than thoughts....
Ashcroft v. al-Kidd , [ 563] U.S. [731, 736,] 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011) (citations and quotation mark omitted).
Commonwealth v. Martin , 627 Pa. 623, 649-50, 101 A.3d 706, 721-22 (2014). See also Brigham City, Utah v. Stuart , 547 U.S. 398, 404, 126 S.Ct. 1943, 1948, 164 L.Ed. 2d 650 (2006) (finding "an action is reasonable under the Fourth Amendment, regardless of the individual officer's state of mind, as long as the circumstances, viewed objectively, justify the action").
As stated above, the McNeely Court determined that the fact-specific nature of the Fourth Amendment reasonableness inquiry into the totality of the circumstances demands that courts "evaluate each case of alleged exigency based on its own facts and circumstances"; the Court did not find relevant the subjective intent of the arresting officer. McNeely , 569 U.S. at 150, 133 S.Ct. at 1559. In that case, McNeely was arrested for DUI and was transported to the hospital where he refused to submit to blood testing. The arresting officer admitted that he chose to forgo applying for a warrant because he believed it was not legally necessary to obtain a warrant.
Despite the officer's subjective intent, the McNeely Court still reviewed whether the blood testing could be justified under the exigent circumstances exception to the warrant requirement. Ultimately, the Supreme Court concluded that the facts and circumstances of that case were insufficient to warrant the application of the exigent circumstances doctrine. See also Schmerber , 384 U.S. at 770, 86 S.Ct. at 1835 (finding that based on the facts and circumstances of that case, the arresting officer "might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened the destruction of evidence") (emphasis added).
As a result, in this case, we find that the suppression court should have conducted *452 an objective inquiry of the totality of the circumstances to determine whether exigent circumstances justified the officers' warrantless testing of Appellee's blood. Had the lower court properly assessed the facts and circumstances presented in this case, it would have found ample evidence to deny suppression of the blood evidence.
At the suppression hearing in this case, several officers testified that the optimal time period to obtain accurate blood testing evidence from Appellee would have been within two hours of the time of the accident. However, as emergency dispatch in Philadelphia does not prioritize car accidents for police response, officers were not dispatched to the crash scene until 10:05 p.m., fifty minutes after the accident had occurred. The officers were not informed of Appellee's possible intoxication; thus, they did not determine that the accident was likely DUI-related until they spoke to bystanders and observed that Appellee had a strong odor of alcohol, his speech was slow and slurred, his eyes were glassy, and his gait was unsteady. Due to the officers' need to investigate the crash scene and to defer to the specialized Accident Investigation District, there was additional delay such that Appellee was not transported from the scene until 10:49 p.m., and his blood draw did not occur until 11:15 p.m., two hours and five minutes after the crash occurred.
In addition to the time constraints that delayed the officers from responding to the scene and transporting Appellee for testing, officers noted the lack of manpower available to seek a warrant on the night of Appellee's arrest. As the crash occurred on Friday evening of Labor Day weekend in 2015, five AID officers were assigned to respond to the critical and DUI related accidents in all of Philadelphia that night. One of the officers was required to stay at the headquarters to dispatch AID officers to incidents and one officer was assigned to administer blood testing to all DUI suspects in Philadelphia. That left three officers assigned to the field to investigate and document several accident scenes and to respond to the vehicle crash in this case.
Moreover, the trial court found credible the testimony of AID officers who testified to practical problems they faced in obtaining a warrant within a timeframe that still preserved the opportunity to obtain reliable evidence. The defense did not contest the prosecution's evidence that it would have taken officers anywhere from seventy minutes to three hours to successfully obtain a warrant, depending on if difficulties arose, such as finding an available commissioner to meet with officers in a prompt manner to review and approve the warrant request. There is no evidence in the record to suggest that the officers had access to technological advances that would make the warrant application process more time-efficient.
Based on the facts and circumstances presented in this case, it is reasonable to believe that the arresting officers were confronted with exigent circumstances, in which the delay necessary to obtain a warrant threatened the destruction of evidence. See Schmerber , supra . Thus, we conclude that the suppression court erred in concluding that the exigent circumstances doctrine did not justify the warrantless testing of Appellee's blood. For the foregoing reasons, we reverse and remand for further proceedings.
Order reversed. Remand for further proceedings. Jurisdiction relinquished.
Judge Panella joins the Opinion.
P.J.E. Bender concurs in the result.

Officer Hughes's first name is not mentioned in the certified record.