J-S51028-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TAROUN  HAND, | : | |
| | : | |
| Appellant | : | No. 2272 EDA 2017 |

Appeal from the Judgment of Sentence June 5, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0009972-2014

BEFORE: DUBOW, J., NICHOLS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY NICHOLS, J.:                **FILED NOVEMBER 26, 2018**

Appellant Taroun Hand appeals from the judgment of sentence following a bench trial and convictions for aggravated assault by vehicle while driving under the influence,[1] driving under the influence of a controlled substance or metabolite,[2] driving under the influence of a controlled substance – impaired ability,[3] recklessly endangering another person,[4] and simple assault.[5] Appellant challenges the trial court's order denying his motion to suppress the evidence of his blood test results.  We affirm.

---

[1] 75 Pa.C.S. § 3735.1(a).

[2] 75 Pa.C.S. § 3802(d)(1).

[3] 75 Pa.C.S. § 3802(d)(2).

[4] 18 Pa.C.S. § 2705.

[5] 18 Pa.C.S. § 2701(a).

We adopt the facts and procedural history set forth in the trial court's opinion. *See* Trial Ct. Op., 3/16/18, at 1-4. Appellant timely appealed and timely filed a court-ordered Pa.R.A.P. 1925(b) statement. He raises the following issues:

> 1. Did not the [trial] court err in denying Appellant's motion to suppress physical evidence where Appellant was subjected to coercive warnings before he consented to have his blood drawn?
>
> 2. Did not the [trial] court err in denying Appellant's motion to suppress physical evidence where, in the absence of exigent circumstances, the police failed to obtain a warrant to draw Appellant's blood?
>
> 3. Did not the [trial] court err in denying Appellant's motion to suppress physical evidence where probable cause did not exist?

Appellant's Brief at 3.

We summarize Appellant's arguments together.[6] He primarily asserts that the suppression court erred in finding exigent circumstances existed to justify the warrantless blood draw. *Id.* at 16-17. Appellant discusses *Commonwealth v. Trahey*, 183 A.3d 444 (Pa. Super. 2018), *appeal granted*, No. 232 EAL 2018 (Pa. Oct. 23, 2018),[7] and contends that the instant

---

[6] We note that Appellant argued that his consent was invalid under *Birchfield v. North Dakota*, 136 S. Ct. 2160 (2016). The suppression court agreed with that argument, but denied Appellant's motion to suppress because it found exigent circumstances.

[7] We note that *Trahey* was decided eight months after Appellant filed his appeal. Recently, the Pennsylvania Supreme Court granted the *Trahey* defendant's petition for allowance of appeal on the issue of whether "the facts and circumstances in [*Trahey*] justify a warrantless blood draw under the

facts, unlike the facts in *Trahey*, do not support a finding of exigency. *Id.* at 18-19. Appellant also suggests that the police could have obtained a warrant earlier than it did. *Id.* at 20-21. He maintains that the police lacked probable cause to arrest him and therefore the results of any blood test was fruit of the poisonous tree. *Id.* at 22. Appellant challenges the police testimony that he was under the influence of drugs as internally contradictory. *Id.* at 23-24.

The standard of review follows:

> When reviewing the grant of a suppression motion, we must determine whether the record supports the trial court's factual findings and whether the legal conclusions drawn from those facts are correct. We may only consider evidence presented at the suppression hearing. . . . We may reverse only if the legal conclusions drawn from the facts are in error.

*Commonwealth v. Ennels*, 167 A.3d 716, 718 (Pa. Super. 2017) (internal quotation marks and citations omitted). "[W]e are limited to considering only the evidence of the prevailing party, and so much of the evidence of the non-prevailing party as remains uncontradicted when read in the context of the record as a whole." *In re L.J.*, 79 A.3d 1073, 1080 (Pa. 2013) (citation and footnote omitted).

After careful consideration of the record, the parties' briefs, and the trial court's opinion, we perceive no error in the trial court's legal conclusions based

---

exigent circumstances exception to the warrant requirement." *Trahey*, 232 EAL 2018 (Pa. Oct. 23, 2018) (order).

upon the record before it.  **See Ennels**, 167 A.3d at 718.  Therefore, we affirm on the basis of the trial court's reasoning.  **See** Trial Ct. Op. at 4-11.

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date:* *11/26/2018*

**FILED**

2018 MAR 16 PH 2: 37

OFFICE OF JUDICIAL RECORDS
CRIMINAL DIVISION
FIRST JUDICIAL DISTRICT
OF PENNSYLVANIA

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CRIMINAL SECTION

COMMONWEALTH OF PENNSYLVANIA : CP-51-CR-0009972-2014
:
v. :
:
TAROUN HAND : 2272 EDA 2017

## OPINION



CP-51-CR-0009972-2014 Comm. v. Hand, Taroun
Opinion

8083421711

LANE, J.                                        March 16, 2018

### OVERVIEW AND PROCEDURAL HISTORY

On April 5, 2017, Taroun Hand (herein "Defendant"), was found guilty after a waiver trial of Simple Assault, 18 Pa.C.S.A. § 2701(a), two counts of Recklessly Endangering another Person, 18 Pa.C.S.A. § 2705, Driving under the Influence ("DUI"): Controlled Substance or Metabolite 1st Offense, 75 Pa.C.S.A. § 3802(d)(1), Aggravated Assault by Vehicle While DUI, 75 Pa.C.S.A. § 3735.1, and Driving Under Influence of Alcohol or Controlled Substance- Impaired Ability, 75 Pa.C.S.A. § 3802(d)(2). Defendant was sentenced to five to ten years of confinement on the §3735.1 conviction, two years of probation after release on the § 2701(a), $1,000.00 in fines, a twelve-month license suspension, seventy-two hours to six months of concurrent confinement for the § 3802(d)(2), Alcohol Highway Safety classes, and Drug and Alcohol Assessment; Defendant also received credit for time served. The § 3802(d)(1) conviction merged with (d)(2) for sentencing purposes.

On June 8, 2017, Defendant filed a timely post-sentence motion. This court denied the post-sentence motion at a hearing on June 23, 2017. On July 18, 2017, Defendant filed a timely

*Com. v. Taroun Hand*                                                         1

appeal. On July 19, 2017, the trial court ordered Defendant to file a Statement of Errors Complained of on Appeal within twenty-one days. Defense counsel requested an extension to file Defendant's Statement of Errors after the Notes of Testimony were transcribed. The court ordered that a statement be filed within twenty-one days of receiving the transcripts. A Statement of Matters Complained on Appeal pursuant to the 1925(b) Order was filed on October 20, 2017. Defendant raises the following issues on appeal:

a. Did the court err in denying the Motion to Suppress when it found that probable cause existed to stop, transport, and arrest, Mr. Hand for driving under the influence and subsequently draw his blood for potential prosecution?

b. In light of recent decisions following *Birchfield v. North Dakota*, namely *Commonwealth v. Myers*, did the court err in denying the Motion to Suppress where the police failed to obtain a warrant to draw the defendant's blood, where exigent circumstances were not present and specific [sic] Mr. Hand's right to privacy, and where the police read coercive warnings to Mr. Hand to obtain his consent to a blood draw?

c. Did the trial court err at sentencing when it considered defendant's illegally obtained chemical test results and applied enhanced DUI sentencing penalties?

## FACTS

On July 9, 2014, at approximately 4:14 PM, emergency medical technicians and police responded to a four-car accident in the area of 700 W. Lehigh Avenue. (N.T. 6/01/16 at p. 6). It was a clear and sunny day (*Id.* at 10). Several witnesses had observed as Defendant drove his car into the wrong lane of traffic, a public bus, two parked cars, and finally into two children who had been standing on the sidewalk with their mother. (*Id.* at 31-32).

Upon arrival at the scene, police were met by a SEPTA (Southeastern Pennsylvania Transportation Authority) bus driver, who reported that she had been driving her bus eastbound when suddenly Defendant had driven into oncoming traffic, swerved, hit the passenger area of her bus, and continued to drive away. (N.T. 6/01/16 at p. 31).

Police were next met by two more witnesses who identified Defendant as the driver of a burgundy 1998 Dodge Caravan. (N.T. 6/01/16 at p. 32; N.T. 4/05/17 at p. 62). The first witness pointed to Defendant and to Defendant's van and stated Defendant was driving the van at a high rate of speed and recklessly. (N.T. 6/01/16 at p. 9). The second witness also identified Defendant as the driver. (*Id.* at 9-10). Both witnesses told police that Defendant continued to travel in the wrong lanes, driving westbound in the eastbound lanes. (*Id.* at 31-32). Defendant then struck two parked vehicles: a Jeep Liberty and a Toyota Camry. (*Id.*). Both Defendant's van and the Jeep Liberty ended up on the sidewalk. (*Id.*). The witnesses explained that the Jeep was pushed by Defendant's car into two children. (*Id.*).

N.T. (thirteen years old) and E.F. (seven years old) had been standing on the sidewalk with their mother when the accident occurred. (N.T. 4/05/17 at pp. 61-62; N.T. 11/03/14 at p. 19). When the car hit them, N.T. flew into the air, hit a wall, and lost consciousness. (N.T. 4/05/17 at pp. 61-62). E.F. was trapped under the Jeep with only her feet visible. (*Id.*; N.T. 11/03/14 at p. 20). The girls' mother believed that E.F. was dead; however, she was eventually rescued from under the car through the combined efforts of family members and neighbors. (N.T. 4/05/17 at p. 62).

After speaking with Defendant at the scene briefly, Officer McCarthy noted that Defendant did not smell like alcohol but that he had red eyes and slurred speech to the point where he was incoherent. (N.T. 6/01/16 at pp. 11-12, 18). Based on sixteen years of police experience, Officer McCarthy determined that Defendant was under the influence of narcotics and was unfit to operate a motor vehicle safely. (*Id.* at 14-15). Officer McCarthy arrested Defendant and police-escorted medics transported Defendant to the hospital. (N.T. 6/01/16 at p. 24).

At the hospital, Accident Investigation District ("AID") Officer Mark Minke read Defendant his *O'Connell* warnings and 75-439 Form, which outlined his rights and the effects of

refusing to submit to a blood draw. (N.T. 6/10/16 at pp. 6-7). After going over the warnings with Officer Minke, Defendant consented to a blood draw. (*Id.* at 9). Forensic toxicologist Dr. Richard Cohn then tested Defendant's blood for drugs and found Clonazepam (a schedule IV narcotic) and Oxycodone (a schedule II narcotic). (N.T. 4/5/17 at p. 69). He concluded that it was reasonably scientifically certain that Defendant was impaired by these drugs and was unfit to operate a motor vehicle safely on the highway at the time of the accident. (*Id.* at 69-70).

After the accident the children N.T. and E.F. were taken to St. Christopher's Hospital. (N.T. 4/05/17 at pp. 66-68). N.T. was treated for abrasions and minor injuries and was discharged from the hospital that night. (*Id.* at 66-67). She had soreness in her neck and head after this accident. (*Id.* at 67). E.F. sustained the most serious injuries from this accident, including a broken pelvis, a broken leg, and a lacerated liver from the impact of the vehicle. (*Id.* at 67-68). She spent approximately three weeks in the hospital. (*Id.*). She then spent another three weeks on bedrest at her home. (*Id.* at 68). The middle of her body and her right leg were placed into full casts. (*Id.*). She continued physical therapy throughout the following school year and was on crutches for the majority of that school year. (*Id.*).

## DISCUSSION

### I. The trial court did not err in denying the Motion to Suppress when it found that probable cause existed to stop and arrest Defendant.

Defendant first contends that the court erred in denying his Motion to Suppress because the police had no probable cause to arrest him. In reviewing the denial of a motion for suppression, the court is limited to considering the suppression hearing record and has the following standard of review:

> We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is de novo. Where, as here, the defendant is appealing the ruling of the suppression court, we

may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

*Commonwealth v. Smith*, 2017 Pa. Super. 416, 2 (Pa. Super. Ct. 2017) (citations omitted).

Police need to have probable cause before making an arrest and before asking for a blood sample. *In re J.G.*, 145 A.3d 1179, 1185 (Pa. Super. Ct. 2016); *Commonwealth v. Aiello*, 675 A.2d 1278, 1280 (Pa. Super. Ct. 1996). The Supreme Court has laid out a "well-established legal standard" for determining probable cause:

> Probable cause is made out when "the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime." ... [We] require only a "probability, and not a prima facie showing, of criminal activity." In determining whether probable cause exists, we apply a totality of the circumstances test.

*Commonwealth v. Thompson*, 985 A.2d 928, 931 (Pa. 2009) (citations omitted). In addition probable cause only requires criminality to be one possible reasonable inference from the circumstances: criminality does not even need to be the most likely inference. *Commonwealth v. Salter*, 121 A.3d 987, 994 (Pa. Super. Ct. 2015) (citing *Commonwealth v. Spieler*, 887 A.2d 1271, 1275 (Pa. Super. 2005)).

In the present case, the court did not err when it ruled that the police had probable cause to stop and arrest Defendant, who had just caused a multi-car "major accident." (N.T. 6/01/16 at p. 19). When police arrived, Defendant's car was up on the sidewalk, and he was immediately identified to police by bystanders as the man who had just been driving extremely recklessly. (*Id.* at 9). There was no other obvious reason besides intoxication why Defendant was continuously driving erratically this way down the street on a clear and sunny afternoon. (*Id.* at 10-14). Bystanders also identified Defendant as responsible for the destruction at the scene, which

*Com. v. Taroun Hand* 5

included grievously injured children and wrecked cars. (*Id.* at 9-10, 32). The police observed that Defendant was incoherent and had red eyes and slurred speech. (*Id.* at 11-12, 18). The officer who arrested Defendant had sixteen years of police experience and training dealing with drug DUIs and based on his observations, concluded that Defendant had been driving while under the influence of drugs. (*Id.* at 14-15). After observing the totality of the circumstances, police could reasonably conclude that Defendant could have been driving under the influence or recklessly endangering the lives of others. The totality of the evidence is more than sufficient to stop, arrest, and request blood from Defendant.

## II. The trial court did not err when it denied Defendant's Motion to Suppress based on a warrantless blood draw, because there were exigent circumstances.

Both the United States Constitution and the Pennsylvania Constitution protect citizens from unreasonable searches and seizures. *Commonwealth v. McAdoo*, 46 A.3d 781, 784 (Pa. Super. Ct. 2012). One search that must be reasonable is the drawing of blood performed at the direction of a police officer. *Com. v. Kohl*, 615 A.2d 308, 315 (Pa. 1992). "A search conducted without a warrant is deemed to be unreasonable and therefore constitutionally impermissible, unless an established exception applies." *Commonwealth v. Strickler*, 757 A.2d 884, 888 (Pa. 2000). If a search is unreasonable, it should be suppressed and on appeal should be governed by the standard set forth in *Smith*, discussed *supra*. *Strickler*, 757 A.2d at 889; *Smith*, 2017 Pa. Super. at 2.

### A. *Birchfield* negates Defendant's affirmative consent.

One accepted exception to a warrantless search is voluntary consent by the person whose blood is to be drawn. *Commonwealth v. Myers*, 164 A.3d 1162, 1173, 1180 (Pa. 2017) (also holding that in cases such as this one, PA's implied consent statute does not negate a need for positive, voluntary consent from a defendant). In *Birchfield v. North Dakota*, the Supreme Court concluded that "motorists cannot be deemed to have consented to submit to a blood test on pain of

committing a criminal offense." 136 S. Ct. 2160, 2186 (U.S. 2016). This decision led to the issuance of *Commonwealth v. Evans* by the Pennsylvania Supreme Court, which held that "[e]ven though Pennsylvania's implied consent law does not make the refusal to submit to a blood test a crime in and of itself," the law "undoubtably" imposed criminal penalties to the point where *Birchfield* controlled. 153 A.3d 323, 331 (Pa. 2016). The decision *Commonwealth v. Ennels* followed, which held that the prior decisions applied to drug-related DUIs in addition to alcohol-based DUIs. 167 A.3d 716, 724 (Pa. Super. Ct. 2017). Thus in cases where defendants had signed Pennsylvania's pre-*Birchfield* consent form, defendant's consent now had to be re-evaluated. *Evans*, 153 A.3d at 331. The court also held that in Pennsylvania it is not an excuse that police issued the pre-*Birchfield* consent form in good faith relying on former law. *Commonwealth v. Kurtz*, 172 A.3d 1153, 1159 (Pa. Super. Ct. 2017). This applied retroactively to cases still open at the time that *Birchfield* was decided if the issue was preserved at all stages. *Commonwealth v. Grays*, 167 A.3d 793, 810 (Pa. Super. Ct. 2017).

In the case at bar, Defendant signed a consent form and agreed to have blood drawn. (N.T. 6/10/16. at pp. 6-9). However, he signed a pre-*Birchfield* consent form. (N.T. 4/05/17 at p. 8). Although Defendant's arrest occurred before *Birchfield* was decided, the case still applies, since Defendant's case was open at the time of decision and he properly moved to suppress his blood results both before and after the *Birchfield* decision. Therefore, Defendant's affirmative consent to have his blood drawn has been negated by *Birchfield* and its progeny.

B. **Specific exigent circumstances allowed for a warrantless blood draw in this case.**

Another accepted exception to a warrantless search occurs when, due to exigent circumstances, the needs of law enforcement are "so compelling that [a] warrantless search is objectively reasonable." *Missouri v. McNeely*, 569 U.S. 141, 148-49 (U.S. 2013) (quoting

*Kentucky v. King*, 563 U.S. 452, 460 (U.S. 2011)). This exception applies to controlled substance DUIs as well as drug DUIs. *Commonwealth v. Ennels*, 167 A.3d 716, 721 (Pa. Super. Ct. 2017).

Though the Supreme Court declined to create a *per se* rule for exigent circumstances in DUI cases, it emphasized that "the natural dissipation of alcohol in the blood" still supports findings of exigency in specific cases. *McNeely*, 569 U.S. at 156; *see also Ennels*, 167 A.3d at 721 (noting case-specific exigencies apply for drug cases). "To determine whether a law enforcement officer faced an emergency that justified acting without a warrant," the court must conduct a "case-by-case" inquiry in which it looks to the "totality of circumstances." *McNeely* at 1556, 1559. The specific exigent circumstances should be presented before the court. *See Commonwealth v. Myers*, 164 A.3d 1162, 1182 (Pa. 2017) (affirming the trial court's finding of no exigent circumstances where the Commonwealth failed to address the issue or demonstrate how there were any exigent circumstances in that specific situation). One factor the court may consider is whether there is "a likelihood that evidence will be destroyed if police take the time to obtain a warrant." *Commonwealth v. Wright*, 961 A.2d 119, 137 (Pa. 2008) (quoting *Commonwealth v. Roland*, 637 A.2d 269, 271 (Pa. 1994)); *see also Ennels*, 167 A.3d at 721 (explaining a warrantless blood draw is allowed for drug DUIs when "time does not allow" officers to secure a warrant).

The Supreme Court referenced *Commonwealth v. Schmerber* as an example of a DUI case where the dissipation of drugs or alcohol in the blood stream was enough to invoke the exigency exception. *McNeely*, 569 U.S. at 156. In *Schmerber*, defendant was arrested after having caused a car accident and his blood was drawn without a warrant or voluntary consent. 384 U.S. 757 (U.S. 1966). The court held that the blood draw was valid because the police officer involved "might reasonably have believed that he was confronted with an emergency, in which the delay necessary

to obtain a warrant, under the circumstances, threatened 'the destruction of evidence.'" *Id.* at 770 (citation omitted).

The necessity for a blood draw in the instant matter is analogous to *Schmerber*, if not more emergent. Here, Defendant had just caused a multi-car accident by driving down the wrong side of the street, swerving back and forth, and careening up onto the sidewalk in broad daylight on a clear summer day. (N.T. 6/01/16 at pp. 31-32). He did not stop after he hit a public bus nor when he hit two more cars. (*Id.*) He did not even help after he ran over two children in front of their mother. (*Id.*) As there was no other obvious explanation for the incident besides intoxication and defendant showed clear signs of drug use, the urgent need for a blood draw to confirm these results was apparent. (*Id.* at 11-12, 18)

To show that there was exigency in the case at bar, the Commonwealth offered a Philadelphia police officer (Officer William Lackman) who specialized in major crashes and DUIs. (N.T. 4/05/17 at p. 10). He testified that, after reviewing the record in this specific case, there would not be enough time to get a warrant for a blood draw. (*Id.* at 13). The DRUGSCAN test that would check Defendant's blood for traces of drugs only goes back up to six hours pre-blood draw. (*Id.* at 38-40). However, based on his personal experience obtaining warrants, it would have taken at least six hours to obtain one in this type of situation from the time the crash occurred. (*Id.* at 14). He testified that this case would be especially difficult because of all of the victims and witnesses, because of the commotion at the accident scene, and because there was an Aggravated Assault by DUI charge. (*Id.* at 13-16).

Officer Lackman explained in detail why a warrant would take too long to secure in this case. (N.T. 4/05/17 at pp. 10-40). First, on the day of the incident, police arrived at the scene and interviewed witnesses (which took an hour and a fifteen minutes here). (*Id.* at 10). Then, the officer

*Com. v. Taroun Hand* 9

responsible for getting the warrant would have to approach the scene and find the reporting officer who would brief him (which would be lengthy here due to the large number of injuries and witnesses). (*Id.* at 16-17). That officer would then travel twenty minutes away to Temple Hospital. (*Id.* at 17, 29). Then the officer would have to observe Defendant (for around ten minutes) to "see what he was doing, see what he looked like, et cetera." (*Id.* at 17). Next, the officer at the scene would brief him as to observations and medications. (*Id.* at 18). He would then travel back to his office to "try and verify through PennDOT files registration information that I was provided for the crash itself for four vehicles" and driver license information. (*Id.*). Next, he would verify the level of injury of the child victims in the accident as that would also be necessary for the warrant (he would try calling but because of HIPAA he may additionally have to travel to St. Christopher's Hospital to get this information). (*Id.* at 18, 35). Only then would he feel he had enough information to realistically get a warrant and type up an affidavit of probable cause (which may take around forty-five minutes). (*Id.* at 18, 35-36).

At that point his affidavit would be sent through the proper channels at the District Attorney's Office and the officer would request an expedited review. (N.T. 4/05/17 at p. 18-19, 36). An ADA would review it, choose whether to approve or deny it, add amendments, and send it back. (*Id.*). Then the actual warrant would need to be typed, the officer would need to find a supervisor to approve it, and the warrant would need to be entered into the Philadelphia tracking system and assigned a number. (*Id.* at 19-20). Then that warrant would need to be taken to the court building to be reviewed and signed by the arraignment magistrate. (*Id.*). Assuming that it is signed, he would have to take it from court back to the hospital, find Defendant, and explain to his medical staff the circumstances which brought him there. (*Id.* at 20-21). Once the blood is secured, it is taken back to police headquarters, placed on a property receipt, and sent off to be analyzed.

(*Id.* at 22). Officer Lackman testified that when calculating the total time this would take he considered only the most optimistic scenarios and did not take into account common time-consuming possibilities, such as that the DA's office would not immediately approve his warrant or that the Temple Hospital staff would refuse to take blood and send him to the hospital's legal department. (*Id.* at 13, 19, 21).

Officer Lackman testified that this would take around four hours and forty-five minutes from the blood draw (measured by the time when AID Officer Minke came into contact with Defendant) and in this case, six hours from the accident overall (because it took around an hour and fifteen minutes for Defendant in this case to get from the crash to the blood draw). (N.T. 4/05/17 at pp. 13-14, 22, 24). The realistic result of this lengthy process would be that the blood draw would take place too late for the six-hour DRUGSCAN test to pick up on Defendant's intoxication levels at the actual time of the accident. (*Id.* at 38-40). Sufficient evidence was presented in this case to demonstrate that there were exigent circumstances. *Cf. Myers*, 164 A.3d at 1182 (finding no exigent circumstances when the Commonwealth did not present any additional evidence of exigency). For those reasons, under the totality of circumstances, exigency existed in *this particular case* and the needs of the police in investigating this multi-car, multi-victim accident were sufficiently compelling to sanction a warrantless blood draw.

### III. The trial conrt did not err when it applied enhanced DUI sentencing penalties.

A trial court has broad discretion in sentencing because it is in the "best position to measure" the record as well as the defendant's character. *Commonwealth v. Riggs*, 63 A.3d 780, 786 (Pa. Super. Ct. 2012). A sentence will not be disturbed on appeal "absent a manifest abuse of discretion." *Commonwealth v. Haynes*, 125 A.3d 800, 808 (Pa. Super. Ct. 2015), *appeal denied,* 140 A.3d 12 (Pa. 2016). Additionally, unless a sentence is "clearly unreasonable," Pennsylvania

law will give deference to sentences that fall within state sentencing guidelines. *Commonwealth v. Coulverson*, 34 A.3d 135, 146 (Pa. Super. Ct. 2011) (quoting 42 Pa.C.S. § 9781(c)(2)). When considering the reasonableness of a sentence, a court should focus on the nature of the offense, the defendant's history, observations of the defendant, the trial court's findings, and the sentence's similarity to the guidelines. 42 Pa.C.S.A. § 9781(d). An unreasonable sentence would be one that has been imposed by a judge "irrationally." *Riggs*, 63 A.3d at 786.

Here, the sentence at issue—five to ten years of incarceration for the charge of Aggravated Assault by DUI—fits neatly within Pennsylvania's suggested guidelines. (N.T. 6/05/17 at pp. 21, 25). Based on Defendant's offense gravity score and prior record score, the minimum suggested sentencing guideline for this conviction would be four to five years of incarceration (plus or minus a year) and the maximum would be ten years of incarceration. (*Id.* at 3-4). In deciding upon a sentence, court considered these guidelines and reviewed all reports that had been prepared for sentencing. (*Id.* at 3-4, 20). The court also listened to several family members speaking on behalf of Defendant and considered their arguments, while noting that "unfortunately some of it wasn't as helpful for [Defendant.]" (*Id.* at 20-21). The court finally considered the victim impact statements by the two children who were injured by Defendant, noting that they were really hard to hear and that "their lives were really impacted by this accident." (*Id.* at p. 20). The court then handed down a sentence that is almost identical to the Pennsylvania suggested sentence. (*Id.* at 21, 25). Therefore the sentence was well-thought out and reasoned.

Finally, Defendant asserts that the sentence was incorrect because the court considered Defendant's "illegal" blood results. First, this goes more towards determination of guilt than sentencing. Second, the court asserts, *supra*, that these blood results were not illegal under the exigency requirement. Assuming arguendo that the blood results should not have been considered

(and even if the Section 3802(d)(1) DUI charge is reversed), this is harmless error in terms of sentencing. The sentence of incarceration at issue is one for Aggravated Assault by DUI. For an Aggravated Assault by DUI violation and sentence, there simply needs to have been any violation of 75 Pa.C.S.A. § 3802 (in addition to an assault). 75 Pa.C.S.A. § 3735.1. An accepted violation of section 3802 for the purposes of an Aggravated Assault by DUI charge is a 3802(d)(1) violation, where no blood results are needed and a conviction can be found based on observation alone:

> Analogously to subsections 3802(a)(2), (b), and (c) for alcohol intoxication, subsection 3802(d)(1) requires a measurement to determine if any amount of a Schedule I, II, or III controlled substance is detectable in the defendant's blood. Second, and analogously to subsection 3802(a)(1) for alcohol intoxication, subsection 3802(d)(2) prohibits driving if one is "under the influence of a drug or combination of drugs to a degree which impairs [one's] ability to safely drive." This provision by its plain text does not require that a drug be measured in the defendant's blood, nor does it specify any particular manner by which the Commonwealth is required to prove that the defendant was under the influence of a drug. Like subsection 3802(a)(1), [...] subsection 3802(d)(2) does not limit, constrain, or specify the type of evidence that the Commonwealth can proffer to prove its case.

*Commonwealth v. Griffith*, 32 A.3d 1231, 1239 (Pa. 2011) (quoting 75 Pa.C.S.A. § 3802). Though Defendant was also convicted of a 3802(d)(1) charge which would usually require a blood test, he received no sentence for that 3802(d)(1) charge (as it merged into his 3802(d)(2) conviction). Since Defendant was convicted of 3802(d)(2) where no blood results are needed and that is an acceptable basis for an Aggravated Assault by DUI conviction, on which Defendant's sentence is based, the blood results are merely cumulative and Defendant's argument is without merit.

## CONCLUSION

After reading the applicable statute, case laws, and rules, the trial court was correct in denying Defendant's Motion to Suppress his chemical test results and in sentencing him accordingly. Therefore, the trial court's decision should be affirmed.

BY THE COURT:

HONORABLE TIMIKA R. LANE